CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2019 JAN 14  AM 9: 24

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **DANIEL E. KELLER,** | ) | |
| **Prison ID # 21804-112,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:18-CV-0093-BL** |
| | ) | |
| **FNU DANIELS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner currently housed in FCI Beaumont of the Bureau of Prisons ("BOP") and formerly housed in FCI Big Spring, commenced this civil action in the Amarillo Division of the Northern District of Texas by filing a "Notice of Default Judgment" along with a "Civil Complaint Affidavit," all of which was docketed as his complaint in July 2017. *See* Doc. 3. At that time, Plaintiff was housed in FCI Beaumont. *See id.* The case was transferred twice, *see* Docs. 11 and 23, before arriving here. Just prior to the most recent transfer, Plaintiff was granted permission to proceed *in forma pauperis*, *see* Doc. 20, and he filed an Amended Complaint (doc. 21) at the direction of the court on a standard form used for actions brought pursuant to 42 U.S.C. § 1983. This amended complaint is now the operative complaint and "supersedes the original complaint and renders it of no legal effect." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (stating that general rule).

On July 2, 2018, the District Judge referred the case for disposition pursuant to 28 U.S.C. § 636(b)(1). *See* Order (doc. 28). The undersigned thereafter issued a Magistrate Judge's Questionnaire ("MJQ") to flesh out the legal and factual bases for this action, *see* MJQ (doc. 33), and Plaintiff

filed answers, *see* Answers to MJQ (doc. 34).[1] The answers constitute an amendment to the amended complaint filed in this action. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Because Plaintiff has not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation and directs that this case be reassigned to Senior District Judge Sam R. Cummings.

## I. BACKGROUND[2]

Plaintiff names seven defendants in his amended complaint: (1) Disciplinary Hearing Officer ("DHO") Daniels; (2) Warden Castaneda; (3) Vocational Training ("VT") Supervisor Stuteville; (4) Psychologist AlsoBrooks; (5) Department of Justice ("DOJ"); (6) an unnamed Regional Director in Grand Prairie, Texas; and (7) Captain Rule. *See* Am. Compl. at 1. For each of these defendants other than the DOJ and the unnamed Regional Director, Plaintiff briefly describes their acts or omissions that allegedly harmed him. *See id.* at 3. He also provides a Statement of Claim which states in full:

> I was removed from my job and placed into VT plumbing by Stuteville. This was after the Warden said "It's a voluntary program." Ms. Daniels (DHO) was the Captain's "ringer" she made sure I was found guilty and punished. I was written up for several rules violations by Alsobrooks, Stuteville, Mr. Hyatt for refusing a VT program and not filling out Pell Grant Application. DHO Cole dismissed all previous violations and said "VT is voluntary." Captain T. Rule heard that I won at my disciplinary hearing and was afraid that the entire inmate population would also like to be removed from VT. He accused me of "inciting a riot."

---

[1] For ease of reference, the Court will cite to these answers as Answer 1, etc.

[2] The background information is taken from the factual allegations within the amended complaint as amended by Plaintiff's answers to the MJQ. In addition, to more fully view the time-line of events leading to this litigation, the Court should take judicial notice of the Civil Complaint Affidavit that Plaintiff provided with his original complaint. Although the amended complaint entirely supersedes the original complaint and renders it of no legal effect, nothing prohibits a court from considering factual allegations provided with a prior pleading. Given additional questions raised by Plaintiff's answers to the court questionnaire, this case presents exceptional circumstances that warrant consideration of factual allegations presented in the prior complaint.

*Id.* at 4.

When Plaintiff arrived at FCI Big Springs in July 2016, Warden Castaneda informed inmates at Arrival and Orientation ("A&O") that VT is a voluntary program designed to benefit inmates. *See* Answer 5(c); Civil Compl. Aff. ¶ 19. Plaintiff was initially assigned to work as a cook, but a medical issue made him ineligible for that position. Civil Compl. Aff. ¶ 19. Plaintiff was then assigned to work in the recreation yard, but on or about October 4, 2016, Defendant Stuteville reassigned him to Vocational Plumbing "without cause, warrant or reasoning." *Id.* ¶ 5. After pursuing grievance procedures by filing an Informal Administrative Request (also known as a BP-8) and a BP-9,[3] Plaintiff approached his unit team on or about October 25, 2016, to determine the status of his grievance. *See id.* ¶¶ 6-9. At that time, he "reminded Unit Team that VT is a voluntary program, that he never signed up for and never gave anyone permission to use his name and or likeness for this program, [and] that the Warden . . . certified at A&O that VT is strictly voluntary." *Id.* ¶ 9.

On or about October 26, 2016, Plaintiff refused to sign a college application form and Pell Grant application resulting in Incident Report ("IR") # 2911220 by VT Supervisor Stuteville. *See id.* ¶ 10; Answer 6(b). That IR alleges a Code 306 violation, namely refusing to work or accept a program assignment. *See* Ex. 4 attached to Civil Compl. Aff. Defendant Stuteville therein states that, Plaintiff refused to sign registration forms and participate in VT plumbing work detail despite the officer's instructions to do so. *See id.* About two days later, Plaintiff was found guilty of IR #

---

[3] To exhaust all available administrative remedies, federal prisoners must complete the following grievance procedure:

(1) informal resolution of the issue with prison staff, submitted on form BP-8; (2) a formal administrative remedy request to the Warden, submitted on form BP-9; (3) an appeal to the Regional Director, submitted on form BP-10; and (4) a national appeal to the Office of General Counsel in Washington, D.C., submitted on form BP-11.

*Butts v. Martin*, 877 F.3d 571, 582 (5th Cir. 2017) (citing 28 C.F.R. §§ 542.13-15).

2911220 and lost sixty days of telephone privileges. *Id.*; Civil Compl. Aff. ¶ 11. On October 29, 2016, Plaintiff appealed through a formal BP-9 submitted to the Warden. Civil Compl. Aff. ¶ 12; Ex. 5 attached to Civil Compl. Aff. A month later, Plaintiff received the Warden's formal response to his appeal of IR # 2911220. Civil Compl. Aff. ¶ 13; Ex. 6 attached to Civil Compl. Aff. The next day, Plaintiff "filed a Formal Demand for Resolution with the Regional Counsel by means of a BP-10." Civil Compl. Aff. ¶ 14; Ex. 17 attached to Civil Compl. Aff.

On or about December 6, 2016, Plaintiff received a rehearing with his unit team due to the response received to his BP-10. Civil Compl. Aff. ¶ 15. On December 9, 2016, Plaintiff succeeded at a disciplinary hearing before DHO Cole. *See* Answer 8(a). Although Plaintiff was taken to a Special Housing Unit ("SHU") for the day, he was released after DHO Cole expunged the discipline. *See id.* At lunch that day, Captain Rule escorted Plaintiff out of lunch line to a group of staff, including the Warden, and threatened Plaintiff. *See id.*; Answer 5(a). During these threats, Captain Rule said that if Plaintiff were to "go around his yard and tell the inmate population that VT is voluntary he's not going to have a 1000 inmates trying to get out of VT, he will write [Plaintiff] up for 'Inciting a Riot', place [Plaintiff] in the SHU, loss credits and transfer." Answer 8(b). Captain Rule also said that he was "going to DHO C. Cole and chew his ass out for letting [Plaintiff] go and [Plaintiff's] last two [incident reports] are going to stick, with his own DHO." *See id.* Following up on his threats, Captain Rule made sure that Plaintiff's remaining incident reports were heard by DHO Daniels thus resulting in SHU placement, "torture," a transfer after six months, and a loss of twenty-eight days of good time credit. Answer 8(c).

On December 14, 2016, DHO Daniels found Plaintiff guilty of two incident reports (IR # 2926525 (Code 310 violation) and IR # 2926383 (Code 307 violation)) regarding VT and Plaintiff

lost twenty-eight days of good-time credits. *See* Answer 2. According to a letter from Plaintiff to an administrative coordinator, these violations were for "Not wanting to go to VT plumbing." *See* Ex. 19 attached to Civil Compl. Aff. As a result of the hearing, Daniels placed Plaintiff in the SHU until his transfer to FCI Beaumont. *See* Answer 3(a). While in the SHU, the lights were kept on, he was denied recreation "yard time," he had no access to law library, no radio, no reading materials, and had shower facilities no more than once a week. *See* Answer 3(c).

When the Unit Team reheard IR # 2911220, it again found Plaintiff guilty and reimposed prior sanction (loss of phone privileges for sixty days), which had already been served. Civil Compl. Aff. ¶ 16; Ex. 21 attached to Civil Compl. Aff. On January 10, 2017, Plaintiff filed another BP-9 alleging violations of procedural due process. *See* Civil Compl. Aff. ¶ 17. As of May 23, 2017, Plaintiff had received no further response regarding IR # 2911220. *Id.* at ¶ 18.

Plaintiff commenced this action in July 2017. *See* Doc. 3. He filed his amended complaint in June 2018. *See* Am. Compl. For each of the named individual defendants, plus VT Plumbing teacher, Mr. Hyatt,[4] Plaintiff asserts violations of the Fourth, Fifth, Eighth, and Fourteenth Amendments. *See* Answer 1. For the DOJ and the unidentified Regional Director, Plaintiff states that the inmate appeal process requires that grievances be pursued at four levels, including the Regional Director and "Washington," and that "persons at all levels of The Federal Prison System need to be held accountable for their actions." *See* Answer 9. As relief in this action, Plaintiff wants (1) his twenty-eight good time credits restored; (2) an opportunity for all inmates to remove themselves

---

[4]Plaintiff suggests that the Court overlooked Hyatt in its questionnaire, but his amended complaint does not list Hyatt as a defendant. The brief reference to the individual in the statement of claim does not necessarily indicate that Plaintiff intends to sue that individual. Nevertheless, the Court should now consider Hyatt to be a defendant based upon Plaintiff's answers to the MJQ.

from VT; (3) compensation or release from prison; and (4) an investigation into Pell Grant fraud by staff at FCI Big Springs. *See* Am. Compl. at 4.

## II. NATURE OF ACTION

Plaintiff commenced this case as a civil action for money damages. *See* Doc. 3. As shown by his requests for summons forms (docs. 5 and 6); submission of summons (doc. 18); motions for trial (docs. 8, 9, 17, and 31); and correspondence (doc. 13), Plaintiff has pursued this case as a civil action for money damages. Furthermore, to date, all courts that have handled this action have considered it to be a civil action under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* Order Transferring Case (doc. 10); Initial Partial Filing Fee Order (doc. 12); Order (doc. 19); Mem. Op. Re: Venue (doc. 22); Order (doc. 28).

In his amended complaint filed on a form used for actions under 42 U.S.C. § 1983, Plaintiff expanded his requested relief beyond mere money damages. *See* Am. Compl. at 4. Although Plaintiff added new claims for relief in his amended complaint, including ones that sound in habeas, the Court should not consider this action as anything other than a prisoner civil action asserting violations of constitutional rights. While 28 U.S.C. § 2241 provides a means for a federal prisoner to challenge discipline resulting in the loss of good-time credits, *see Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) (per curiam),[5] the prisoner must file the § 2241 "petition in the

---

[5]In an unpublished, per curiam opinion, the Fifth Circuit "assume[d] arguendo that federal prisoners have a liberty interest in their good-time credits" and cited *Henson*, but also directed readers to *Pepper v. United States*, 562 U.S. 476, 502 n.14 (2011) (stating that "[a]n award of good time credit by the [BOP] does not affect the length of a court-imposed sentence," and that "[s]uch credits may be revoked at any time before the date of a prisoner's release"). *See Deen-Mitchell v. Young*, 490 F. App'x 650, 651-52 (5th Cir. 2012). Two cases have cited to this *Deen-Mitchell* assumption when addressing habeas relief under § 2241. *See Roundtree v. FCI Seagoville Warden Harmon*, No. 3:16-CV-485-B-BN, 2017 WL 2791110, at *1-2 (N.D. Tex. May 17, 2017) (recommendation of Mag. J.) *accepted by* 2017 WL 2790532 (N.D. Tex. June 26, 2017); *Heavner v. Harmon*, No. 3:17-CV-217-M-BN, 2017 WL 1907440, at *1-2 (N.D. Tex. Apr. 17, 2017) (recommendation of Mag. J.) *accepted by* 2017 WL 1906797 (N.D. Tex. May 8, 2017). While the statement noted in footnote 14 in *Pepper* may provide reason to pause momentarily with respect to whether a loss of federal good-time credits may affect the duration of an inmate's term of incarceration, several reasons exist to not give the statement

district where he is incarcerated; if the claimant files in another district, that court has no jurisdiction

to hear the petition," *United States v. Mares*, 868 F.2d 151, 151-52 (5th Cir. 1989). Furthermore,

the appropriate respondent for a § 2241 habeas petition is "the warden of the federal prison at which

he was confined" when he commenced the habeas action. *Griffin v. Ebbert*, 751 F.3d 288, 289 (5th

Cir. 2014). Even though Plaintiff added habeas type claims in his amended complaint, he did not

invoke § 2241 or any habeas statute and did not name the warden of FCI Beaumont as a respondent.

Given the jurisdictional bar to Plaintiff pursuing any habeas claims based on the loss of his good-

time credits in this Court, the Court should not construe this action as a habeas action under § 2241.[6]

    Because Plaintiff brings this civil suit based upon acts and omissions of federal actors, 42

U.S.C. § 1983 does not provide a proper basis for this action. *See Jennings v. Clay*, No. 2:13-CV-

0015, 2013 WL 3388403, at *4 (N.D. Tex. July 8, 2013). When a plaintiff claims "constitutional

violations against federal government actors," the claims arise under *Bivens*. *Id.* In *Bivens*, the

United States Supreme Court "recognized for the first time an implied private action for damages

against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp.

v. Malesko*, 534 U.S. 61, 66 (2001). "*Bivens* is the counterpart to 42 U.S.C. § 1983, and extends the

---

such a broad reading, including the context of the statements in *Pepper* and the fact that "the length of a court-imposed sentence" remains the same unless modified by the sentencing court. However, that fact does not mean that the duration of actual time served cannot be affected through an award of good time credit by the BOP.

    [6]It is noted that Plaintiff added his habeas-type claims in an amended complaint filed in the Beaumont Division of the Eastern District of Texas just prior to the transfer of the case to this Court. As the district of incarceration, the Eastern District is the proper court to hear a § 2241 habeas petition from Plaintiff regarding the loss of his good-time credits. However, Plaintiff did not name the warden of FCI Beaumont as a respondent and the Eastern District did not construe any part of this civil action as a § 2241 habeas petition. To the extent Plaintiff wants to pursue habeas relief, he has not been prejudiced by the Eastern District not construing the action as a § 2241 petition because he can still file such a petition and the Fifth Circuit has not applied a statute of limitations to such a petition. *See Miller v. Stephens*, No. 2:14-CV-0103, 2017 WL 3142402, at *1 (N.D. Tex. June 15, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3130330 (N.D. Tex. July 21, 2017); *Na'im v. Tex. Bd. of Pardons & Paroles*, No. 3:12-CV-2827-D, 2013 WL 2367788, at *1 (N.D. Tex. May 30, 2013) (adopting recommendation of Mag. J.).

protections afforded under § 1983 to parties injured by federal actors." *Ali v. Imm. & Customs Enf't*,

No. 1:16-CV-037-BL, 2017 WL 4325785, at *2 (N.D. Tex. Aug. 29, 2017) (recommendation of

Mag. J.) *adopted by* 2017 WL 4296756 (N.D. Tex. Sept. 26, 2017). Notably, *Bivens* "only provides

a remedy for victims of constitutional violations by government officers in their individual capa-

cities." *Id.* *Bivens* provides no basis for a cause of action against a federal agency. *See Corr. Servs.*

*Corp.*, 534 U.S. at 72; *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).

The approach taken in the *Bivens* context has changed with *Ziglar v. Abbasi*, 137 S. Ct. 1843

(2017) and a related case remanded in light of *Abbasi*, *Hernandez v. Mesa*, 885 F.3d 811 (5th Cir.

2018) (en banc), *pet. cert. filed* (June 15, 2018) *and docketed* (June 20, 2018). *See Maria S. as Next*

*Friend for E.H.F. v. Garza*, No. 17-40873, 2019 WL 101868, at *4 (5th Cir. Jan. 4, 2019). "[T]he

current approach renders implied *Bivens* claims a "disfavored" remedy." *Hernandez*, 885 F.3d at

816 (footnote omitted). These cases are particularly noteworthy because the recovery of damages

in this case "is possible only if the federal courts approve a *Bivens* implied cause of action." *See id.*

at 815. Therefore, "*Abbasi* instructs [the courts] to determine initially whether these circumstances

present a 'new context' for *Bivens* purposes, and if so, whether 'special factors' counsel against

implying a damages claim against an individual federal officer." *Id.*

This two-part analysis requires careful consideration of the particular claims asserted under

the facts alleged. *See id.* at 816-23. Both decisions stress that "even a modest extension [of *Bivens*]

is still an extension." *See id.* at 816; *Abbasi*, 137 S. Ct. at 1864. As noted by the Supreme Court,

"a case can present a new context for *Bivens* purposes if it implicates a different constitutional right;

if judicial precedents provide a less meaningful guide for official conduct; or if there are potential

special factors that were not considered in previous *Bivens* cases." *Abbasi*, 137 S. Ct. at 1864.

8

Unless differences between the existing context and a prior one are "so trivial that they will not suffice to create a new *Bivens* context," the new context requires the courts to "perform[] a special factors analysis" and to "analyze[] whether there were alternative remedies available or other 'sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy'" in the new context. *Id.* at 1865.

Reasons exist to exercise caution in applying the current approach during screening in this evolving area. First, a petition for certiorari has been filed in *Hernandez*. Second, the approach set out in *Abbasi* rests upon the slimmest of margins because three justices "took no part in the consideration or decision of these cases," another concurred in part and concurred in the judgment, and two others dissented. *See id.* at 1869-72. The majority decision thus rests on three justices plus the concurring justice. Notably, one of the three justices in the majority has retired since the decision. Of course, these are not reasons to decline to follow binding precedent, but they are reasons for exercising caution about applying a new approach.

Moreover, as recognized in *Hernandez*, "whether a *Bivens* remedy should be available under the circumstances of this case" can be a "difficult question." 885 F.3d at 823 (Dennis, J. concurring in judgment). The Fifth Circuit has also noted that "questions regarding the proper scope of *Bivens* are complex" and that it is "ill-equipped to conduct such an analysis" without briefing or arguments on the issues. *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017). Further, the Supreme Court itself "decline[d] to perform the special factors analysis itself," even though it had the capability to do so. *Abbasi*, 137 S. Ct. at 1865. It declined to do so because "the briefs have concentrated almost all of their efforts elsewhere," there was an "absence of a comprehensive presentation by the parties," and the lower court had not conducted the analysis. *See id.* As typical in a case at the screening stage,

9

this Court likewise lacks briefing on issues relevant to the approach taken in *Abbasi*. While some cases may present a clear basis for applying *Abbasi* and *Hernandez* during screening, neither case requires such analysis at this stage of the litigation in this case. Accordingly, at this stage, the Court should assume without deciding that there is an implied cause of action under *Bivens* based on the claims asserted on the alleged facts of this case and proceed with preliminary screening.

## III. PRELIMINARY SCREENING

The Court has permitted Plaintiff to proceed *in forma pauperis* in this action. His complaint is therefore subject to screening under 28 U.S.C. § 1915(e)(2)(b). Furthermore, as a prisoner seeking relief from a governmental entity his complaint is subject to screening pursuant to § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). Both statutes provide for sua sponte dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. It has long been the law in the Fifth Circuit that claims which fall under the rule announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) are "legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) (citing *Boyd v. Biggers*, 31 F.3d 279, 283 (5th Cir. 1994)); *accord Stephenson v. Reno*, 28 F.3d 26, 27 (5th Cir. 1994) (action under *Bivens*).

A complaint fails to state a claim upon which relief may be granted when it fails to plead

10

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007).

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged. The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully. Where
> a complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). To avoid dismissal for failure to

state a claim, plaintiffs must allege facts sufficient to "raise the right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. Mere "labels and conclusions" nor "a formulaic recitation of the

elements of a cause of action" suffice to state a claim upon which relief may be granted. *Id.*

The factual allegations and claims asserted in this case present a number of matters that the

Court must consider, including the viability of claims for relief asserted, the viability of claims

asserted, and the potential applicability of claims being barred by *Heck*.

## IV.  REQUESTED RELIEF

In his amended complaint, Plaintiff seeks various relief in addition to money damages. *See*

Am. Compl. at 4. "The Prison Litigation Reform Act of 1995 (PLRA) establishes standards for the

entry and termination of prospective relief in civil actions challenging prison conditions." *Miller v.*

*French*, 530 U.S. 327, 331 (2000). Within the meaning of the PLRA,

> the term "civil action with respect to prison conditions" means any civil proceeding
> arising under Federal law with respect to the conditions of confinement or the effects
> of actions by government officials on the lives of persons confined in prison, but does
> not include habeas corpus proceedings challenging the fact or duration of confine-
> ment in prison.

18 U.S.C.A. § 3626(g)(2). Section 3626 of the "PLRA narrowly limits the relief which a federal

court may order in prisoner suits." *Ruiz v. Estelle*, 161 F.3d 814, 817 (5th Cir. 1998). Section

3626(a)(1)(A) provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

Furthermore, "prospective relief" is broadly defined under the PLRA "as 'all relief other than compensatory monetary damages.'" *Castillo v. Cameron Cnty., Tex.*, 238 F.3d 339, 351 n.19 (5th Cir. 2001) (quoting 18 U.S.C. § 3626(g)(7)). To the extent Plaintiff seeks any relief other than compensatory monetary damages, he has requested prospective relief within the meaning of the PLRA.

Although Plaintiff requests an investigation into Pell Grant fraud, investigations sought by prisoners are "simply not available through a civil action." *King v. Forest*, No. 3:08-CV-1405-L, 2008 WL 4951049, at *2 (N.D. Tex. Nov. 14, 2008) (accepting recommendation of Mag. J.) (citing *McCall v. Peters*, No. 3:00-CV-2247-D, 2001 WL 1082417, at *2 (N.D. Tex. Aug. 28, 2001) (accepting recommendation of Mag. J. that a criminal investigation is not available)). A federal court "is not an investigative body, and cannot order a non-party to conduct an investigation." *Green v. Revel*, No. 2:09-CV-0147, 2010 WL 597827, at *2 (N.D. Tex. Feb. 19, 2010). Such requested relief "is without an arguable basis in law and is frivolous." *Id.*

Additionally, to the extent Plaintiff seeks an opportunity for all inmates to remove themselves from VT, he seeks prospective injunctive relief. With respect to seeking relief on the behalf of other inmates, Plaintiff has not provided any legal basis for doing so in this case. Moreover, "[t]o the extent that Plaintiff seeks injunctive relief for anyone other than himself, the request fails to state a

claim upon which relief may be granted." *Holmes v. Owens*, No. 3:10-CV-1828-N-BH, 2010 WL

5184251, at *3 (N.D. Tex. Nov. 10, 2010) (recommendation of Mag. J.) *accepted by* 2010 WL

5110099 (N.D. Tex. Dec. 14, 2010). As a general rule, a plaintiff may not bring an action on behalf

of another, but only for deprivations that he himself has suffered. *See Beavers v. Brown*, No. 3:13-

CV-1395-B, 2013 WL 6231542, at *8 n.7 (N.D. Tex. Dec. 2, 2013) (accepting recommendation of

Mag. J. citing *Inmates v. Owens*, 561 F.2d 560, 562-63 (4th Cir. 1977)); *Green v. State*, No. 3:01-

CV-0060-D, 2001 WL 548899, at *1 (N.D. Tex. May 21, 2001) (same).

   As it pertains to Plaintiff himself, the requested injunctive relief is moot because he is no

longer housed in FCI Big Spring and nothing indicates that he may be transferred back there. "The

transfer of a prisoner out of an institution often will render his claims for injunctive relief moot"

unless he shows "either a 'demonstrated probability' or a 'reasonable expectation' that he would be

transferred back to [the facility] or release and reincarcerated there." *Oliver v. Scott*, 276 F.3d 736,

741 (5th Cir. 2002) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Plaintiff "has neither

alleged nor demonstrated that there is a reasonable likelihood that he will be transferred back to . .

. FCI Big Spring. Hence, his request for prospective injunctive relief should be dismissed as moot."

*Serrano v. Addy*, No. 1:03-CV-046-C, 2004 WL 691203, at *4 (N.D. Tex. Mar. 31, 2004).

   Furthermore, to the extent Plaintiff seeks "early release from prison as part of his relief, he

has requested relief which is not available under *Bivens*." *Id.* at *3. Similarly, the Court should find

that the requested restoration of good time credits cannot be granted in a prisoner civil rights action.

Through a non-habeas civil action, prisoners cannot "challenge the fact or duration of his confine-

ment or recover good-time credits lost in a prison disciplinary proceeding." *Clarke v. Stalder*, 154

F.3d 186, 189 (5th Cir. 1998) (en banc). Obtaining "the return of his good-time credits" is "cog-

nizable only in a habeas corpus action, not in a *Bivens* action." *Muhammad v. Weston*, 126 F. App'x 646, 648 (5th Cir. 2005) (per curiam).  As already discussed, this Court lacks jurisdiction over any habeas claim raised in this action.

For the foregoing reasons, Plaintiff has no potentially viable claim for relief in this action other than his request for monetary compensation.  For Plaintiff to continue to pursue such relief, his asserted claims must survive summary dismissal at this screening stage based on his factual allegations.  As part of preliminary screening, courts may consider whether claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny.

## V.  VIABILITY OF CLAIMS

As construed for purposes of screening, Plaintiff asserts various *Bivens* claims for money damages against eight defendants: (1) five prison officers at FCI Big Spring named in his amended complaint; (2) his VT Plumbing Teacher at FCI Big Spring added in his answers to MJQ; (3) an unnamed Regional Director; and (4) the Department of Justice.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, (1971), "the Supreme Court recognized an individual's right to seek recovery for violation of consti-tutional rights by a person acting under color of federal law." *Thompson v. Crnkovich*, No. 1:16-CV-055-BL, 2017 WL 5514519, at *2 (N.D. Tex. Nov. 16, 2017).  To state a claim under *Bivens*, there must be a violation of a constitutional right by a federal actor.  For purposes of this recommendation, the Court should presume that all defendants are federal actors under *Bivens* even though it is unclear whether the VT Plumbing Teacher actually qualifies.[7]  Plaintiff broadly proclaims violations of the

---

[7]Notably, Plaintiff suggests that teachers at FCI Big Spring are paid by Howard College.  *See* Answer 9.  If that sug-gestion is accurate then Hyatt may not be a federal actor for purposes of *Bivens*.

Fourth, Fifth, Eighth, and Fourteenth Amendments, *see* Answer 1, without really tying the factual allegations to the alleged violations, although he does specifically refer to cruel and unusual punishment twice in his answers to the Court's questions, *see* Answers 3(b) and 8(d). Plaintiff asserts a number of claims against multiple individuals – some of which readily fail to survive preliminary screening and some of which warrant greater discussion and detail.

## A. Official Capacity Claims and Claims Against Federal Agency

While it does not appear that Plaintiff pursues any claim against the individual defendants in their official capacities, such claims are not permitted under *Bivens* in any event. *See Ali v. Imm. & Customs Enf't*, No. 1:16-CV-037-BL, 2017 WL 4325785, at *2 (N.D. Tex. Aug. 29, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 4296756 (N.D. Tex. Sept. 26, 2017). Similarly, Plaintiff "cannot maintain a *Bivens* action against the United States Department of Justice, a federal agency." *Keys v. U.S. Dep't of Justice*, 285 F. App'x 841, 842 (3d Cir. 2008); *accord Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994). The Court should dismiss any claims against the DOJ and any official capacity claims with prejudice as legally frivolous.

## B. Claims against Regional Director

Plaintiff sues the unnamed Regional Director solely because his administrative appeal was denied. *See* Answer 9. However, prisoners do "not have a federally protected liberty interest in having [their] grievances resolved to [their] satisfaction." *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Because Plaintiff "relies on a legally nonexistent interest, any alleged due process violation arising from the [denial of his administrative appeal] is indisputably meritless." *Id.* Accordingly, the Court should dismiss all claims against the Regional Director as legally frivolous.

15

## C. Claims against Warden

Plaintiff sues Warden Castaneda because he allowed Captain Rule to threaten Plaintiff and Daniels to punish Plaintiff. Am. Compl. at 3. Plaintiff explains that Captain Rule "works for the Warden" and after Plaintiff's success at the prior disciplinary hearing with DHO Cole, the Captain threatened Plaintiff in front of the Warden who did nothing. *See* Answer 5(a). The Warden allowed Daniels to punish Plaintiff by not overturning the discipline imposed by Daniels. *See* Answer 5(b).

Plaintiff's claim against the Warden for denying his grievance is legally frivolous for the same reasons as the claim against the Regional Director. *See Geiger*, 404 F.3d at 374. Furthermore, although Plaintiff also sues the Warden for allowing Captain Rule to threaten him, such a claim also does not survive preliminary screening. It has been long established that "mere threatening language and gestures of a custodial office[r] do not, even if true, amount to constitutional violations." *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (citation omitted). The failure of the Warden to take action upon hearing the Captain's threats likewise does not amount to a constitutional violation.

Additionally, that the Captain works for the Warden provides no basis for liability under *Bivens*. "Federal officials cannot be held vicariously liable for the acts of subordinates under the doctrine of respondeat superior." *Watson v. Samuels*, No. 1:15-CV-116-BL, 2017 WL 3896360, at *7 (N.D. Tex. Aug. 3, 2017) (recommendation of Mag. J.) *adopted by* 2017 WL 3887912 (N.D. Tex. Sept. 5, 2017). A supervisory official, like the Warden, can be liable in two ways: (1) "personal involvement in the acts causing the deprivation of a person's constitutional rights" and (2) through "a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). This case does not involve any allegedly deficient

16

prison policy and the alleged personal involvement by the Warden does not state a viable claim under *Bivens*.

For all of these reasons, the Court should find the claims asserted against the Warden to be legally frivolous or fail to state a claim upon which relief can be granted on the facts alleged.

### D. Claims based on Threats by Captain Rule

Plaintiff claims that Captain Rule threatened him. Answers 5(a), 8(a), and 8(b). As mentioned above, mere threats do not violate the constitution. *See McFadden*, 713 F.2d at 146. Consequently, the Court should find that the alleged threats by Captain Rule fail to state a claim upon which relief can be granted under *Bivens*.

### E. Conspiracy Claim

While stating additional facts for a claim against Captain Rule, Plaintiff makes a conclusory claim that "all of these different staff members took a personal interest and conspired to make [him] lose time, be tortured and transferred, all because Captain rule was mad, that I was right and I stood up for my Constitutional Rights and was subjected to 6 months of cruel and unusual punishment." Answer 8(d). To the extent Plaintiff intends to pursue a conspiracy claim, it necessarily fails. First, because all staff members of the prison are part of a single entity, "a conspiracy claim against them is barred by the intra-corporate conspiracy doctrine." *Covarrubias v. Wallace*, 907 F. Supp. 2d 808, 818 (E.D. Tex. 2012) (adopting recommendation of Mag. J.). Second, even if that doctrine did not bar the conspiracy claim, Plaintiff has failed to make more than a conclusory allegation of a conspiracy, which is insufficient to state a claim. *See id.* at 819.

### F. Fourth Amendment

Plaintiff alleges that six defendants have violated his rights under the Fourth Amendment.

17

*See* Answer 1.  That Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  There appears to be no plausible basis for a Fourth Amendment claim based on the facts alleged in this case.  This case presents no issue regarding a warrant or any alleged unreasonable search.  The only possible means of shoehorning the facts of this case into a Fourth Amendment violation is to consider placement in the SHU as an unreasonable seizure.  However, research has uncovered no case applying the Fourth Amendment in such context.  It thus appears that there is no discernable Fourth Amendment claim on the facts alleged in this case.  Accordingly, the Court should find Plaintiff's reliance on the Fourth Amendment legally frivolous.  Alternatively, it should find no Fourth Amendment claim plausible on the facts alleged.

Notably, the Fifth Circuit has long held that "absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996) (addressing placement in administrative segregation due to post-conviction classification as a gang member); *accord Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (addressing placement in extended lockdown for suspected or known gang members).  *But see Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (recognizing a crucial exception to the general rule that a prisoner has no liberty interest in his placement and holding that prisoners do have a liberty interest in not being incarcerated in super-maximum security conditions).  These cases address placement into segregation or lockdown as a potential due process violation rather than any type of violation of the Fourth Amendment.  The

Court should likewise consider Plaintiff's claims about his placement into the SHU through the lens of due process.

## G. Fourteenth Amendment

Plaintiff also alleges that six defendants have violated his rights under the Fourteenth Amendment. *See* Answer 1. This Amendment prohibits States from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Because this Amendment proscribes State action only, however, it "is not applicable to the Federal Government" or federal actors. *Morales v. Daley*, 116 F. Supp. 2d 801, 803 n.1 (S.D. Tex. 2000). Nevertheless, courts have found the "due process rights set forth in the Fifth and Fourteenth Amendments . . . to be co-extensive." *Id.* An analysis under the Fifth Amendment thus provides the proper means to address any due process claim Plaintiff asserts. Although the Court could reasonably find any claim based on the Fourteenth Amendment to be legally frivolous under the facts of this case, it can also reasonably construe the invocation of the Fourteenth Amendment to merely invoke due process protections that are governed by the Fifth Amendment in this instance. Under either alternative, Plaintiff has no viable claim under the Fourteenth Amendment per se. If he has a viable due process claim, it arises under the Fifth Amendment given his incarceration in a federal prison at all relevant times.

## H. Fifth Amendment

Plaintiff specifically alleges that six defendants have violated his Fifth Amendment rights. *See* Answer 1. The Fifth Amendment contains several proscriptions on government action. *See, generally,* U.S. Const. amend. V. As pertinent to this case, the Due Process Clause of the Fifth Amendment provides: "No person shall be . . . deprived of life, liberty, or property, without due process of law." *See id.* The "Due Process Clause protects individuals against two types of govern-

ment action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). The substantive component "prevents the government from engaging in conduct that 'shocks the conscience,' or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (citations omitted). On the other hand, the procedural component requires that government action "be implemented in a fair manner" even when the action "survives substantive due process scrutiny." *Id.*

"Although lawful incarceration brings about the necessary withdrawal of many privileges and rights, prisoners do not shed all their rights at the prison gate." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).[8] Inmates may have liberty interests that are protected by the Due Process Clause. *See id.*; *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995). However,

> these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 484 (citations omitted). Those who seek procedural protection under the Due Process Clause "must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The due process clause "does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *See Sandin*, 515 U.S. at 478.

In some circumstances, a prisoner's "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty.'" *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones*, 445 U.S. 480, 493-494 (1980) as an example of a liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution)). A liberty interest may also "arise from an

---

[8]Because the due process clauses of the Fifth and Fourteenth Amendment are co-extensive, courts may rely on cases interpreting due process in the context of 42 U.S.C. § 1983 even when *Bivens* provides the legal basis for the claim before the particular court. Of course, if claims survive preliminary screening, *Abbasi* and cases following it may require the Court to specifically determine whether there is actually an implied cause of action under *Bivens* under the circumstances of this case.

expectation or interest created" through laws or policies. *Id.* (citing *Wolff v. McDonnell*, 418 U.S.

539, 556-58 as an example of a liberty interest in avoiding loss of state-created system of good-time

credits). However, "the Constitution itself does not give rise to a liberty interest in avoiding transfer

to more adverse conditions of confinement." *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225

(1976)). Nevertheless, "a liberty interest in avoiding particular conditions of confinement may arise

from [relevant] policies or regulations, subject to the important limitations set forth in *Sandin*." *Id.*

at 222.

     *Sandin* "abrogated the methodology" previously used for determining whether a prisoner had

a liberty interest. *Id.* "After *Sandin*, it is clear that the touchstone of the inquiry into the existence

of a protected . . . liberty interest in avoiding restrictive conditions of confinement is not the language

of regulations regarding those conditions but the nature of those conditions themselves 'in relation

to the ordinary incidents of prison life.'" *Id.* at 223 (quoting Sandin, 515 U.S. at 484).

     "Placement in administrative segregation or a change in custodial classification as a result

of a disciplinary infraction, without more, does not constitute a deprivation of a constitutionally

cognizable liberty interest, and, therefore, there is no right to due process." *Allums v. Phillips*, 444

F. App'x 840, 841 (5th Cir. 2011) (per curiam). "Only when a prisoner demonstrates 'extraordinary

circumstances' may he maintain a due process challenge to a change in his custodial classification."

*Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (quoting *Pichardo v. Kinker*, 73 F.3d

612, 612-13 (5th Cir. 1996)). Stated differently, "segregated confinement is not grounds for a due

process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484). This test, as set out in

*Sandin*, is triggered when an inmate is placed in segregation or extended lockdown not because of

21

"their initial classification," but because of some later change including placement for disciplinary reasons. *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003).

In this case, Plaintiff alleges that, as of the result of the disciplinary hearing before DHO Daniels, he was placed in the SHU, transferred to FCI Beaumont after six months, and lost twenty-eight days of good time credit.[9] First, it is unclear whether the transfer was actually part of the punishment imposed or whether it just happened six months later. In any event, Plaintiff has made no allegation that the transfer to FCI Beaumont imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. "The Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000) (citing *Meachum*, 427 U.S. at 225). In addition, inmates have "no liberty interest in being housed in any particular facility." *Id.* Plaintiff cannot succeed on a Due Process claim regarding the transfer without allegations that the transfer to FCI Beaumont imposes an atypical and significant hardship on Plaintiff in relation to the ordinary incidents of prison life. Because Plaintiff makes no such allegations, any due process claim based on the transfer fails to state a claim upon which relief can be granted.

Plaintiff has alleged that the SHU placement put him in a more restrictive condition of confinement for six months. The Court need not decide at this juncture whether these allegations are sufficient to state a due process violation because the imposed punishment also includes a loss of good-time credits, which at least at this stage of the proceedings, the Court should assume invokes

---

[9]Plaintiff also mentions that he was tortured as a result of Daniel's disciplinary hearing, *see* Answers 8(c) and 8(d), but nothing in his amended complaint or answers to MJQ indicate that the "torture" was actually an imposed punishment. Instead, the torture appears to be the conditions of confinement in the SHU, particularly, leaving the lights on in his cell, *see* Answer 3(c). The torture allegation more appropriately relates to Plaintiff's Eighth Amendment claim and will be addressed in that context. Indeed, it is within his Answer 8(d) where Plaintiff specifically mentions being "subjected to 6 months of cruel and unusual punishment."

22

due process protections. *See Deen-Mitchell v. Young*, 490 F. App'x 650, 650–51 (5th Cir. 2012) (per curiam) (assuming "arguendo that federal prisoners have a liberty interest in their good-time credits"); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000) (per curiam) (addressing good-time credits as a liberty interest after noting that the "BOP does not challenge the district court's conclusion that Henson had a statutorily-created liberty interest in his good time credit").

Before further addressing the factual and legal sufficiency of Plaintiff's alleged due process violation, the Court should consider the extent that the claims asserted against particular defendants might fall under the rubric of due process. Even though Plaintiff broadly asserts violations of the Fifth Amendment against six individuals, *see* Answer 1, such assertion is merely a label that is of itself insufficient to state a claim upon which relief can be granted, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This recommendation has already addressed why Plaintiff fails to state a claim against the Warden. Plaintiff's alleged facts, as set out previously in this recommendation, are insufficient to state a due process claim against the Warden. A recitation of the alleged facts with respect to the other five individuals is warranted to determine whether they plausibly invoke due process protection.

### 1. Claims against DHO Daniels

In his brief summary of the acts of DHO Daniels that Plaintiff claims harmed him, he states that she took twenty-eight days of his life, placed him in SHU for six months, and kept the lights on for the entire six months.[10]  Am. Compl. at 3.  The claims against DHO Daniels stem from the

---

[10]Plaintiff also indicates that Daniels "black boxed" him, Am. Compl. at 3, but in answer to the court questionnaire, he concedes that Daniels had no personal involvement in the black boxing, Answer 3(b).  He states that guards that transported him between prison black boxed him, characterizes this as "an extra form of cruel and unusual punishment," and speculates that the Warden or Captain Rule "could have very easily asked that [he] be further punished." *Id.*  This claim will be addressed in the context of the Eighth Amendment as will the conditions of confinement in the SHU, including the lighting.

December 14, 2016 disciplinary hearing in which she found Plaintiff guilty of two incidents. *See*

Answers 2 and 3(a). Plaintiff's alleged facts against Daniels are limited to those set out in answer

to Question 3 of the MJQ except that he states that he feels that "she is more responsible for the extra

punishments [he] received," DHO Cole had previously expunged the exact same incident reports

from a different incident, but Daniels would not allow Plaintiff to show the "same evidence" or call

witnesses. *See* Answer 4. Under these alleged facts, Plaintiff might have a plausible due process

violation under the legal principles discussed above.

### 2. Claims against Captain Rule

Plaintiff asserts various factual allegations against Captain Rule. As already discussed,

claims based on threats by Captain Rule state no plausible claim under *Bivens*. However, Plaintiff

also alleges that Captain Rule followed up on his threats resulting in the disciplinary hearing before

DHO Daniels that resulted in his loss of good-time credits and placement in the SHU. Answer 8(c).

As additional facts for a claim against Captain Rule, Plaintiff states:

> If I was allowed to appear before DHO C. Cole (again) and present my same evi-
> dence. I asked DHO Cole if he could remove me from VT Plumbing, he replied,
> "My Unit Team can do that". I replied, "They are afraid and turned around while I
> was handcuffed and said, "Did you hear what DHO Cole just declared?" So all of
> these different staff members took a personal interest and conspired to make me lose
> time, be tortured and transferred, all because Captain Rule was mad, that I was right
> and I stood up for my Constitutional Rights and was subjected to 6 months of cruel
> and unusual punishment.

Answer 8(d).[11] Under the alleged facts against Captain Rule, Plaintiff might have a plausible due

process violation against him.

---

[11]Obviously, some of these factual allegations relate more appropriately to Plaintiff's Eighth Amendment claim and
will also be addressed in that context.

24

### 3. Claims against VT Supervisor

Plaintiff claims that VT Supervisor Stuteville tried to force him to sign college registration paperwork and punished him when he refused. Am. Compl. at 3. These claims stem from an incident in October 2016 when Stuteville completed an incident report for Plaintiff's refusal to sign college paperwork. *See* Answer 6(b). According to Plaintiff, Stuteville punished him by writing up a fake incident report for something that has nothing to do with federal prison and then continuing to write him up daily. *See* Answer 6(c). Plaintiff alleges that Stuteville told him that he would keep writing him up until he lost good time and was transferred from FCI Big Spring. *See id.* As additional facts for asserting a claim against Stuteville, Plaintiff alleges that he would check with Hyatt daily to see whether he was in class and, if he was absent, Stuteville would direct Hyatt to write him up. *See* Answer 6(d). Plaintiff also alleges that Stuteville told Alsobrooks to write him an incident report for being five minutes late to her drug class. *See id.*

While it is not entirely clear as to whether these events led to the punishment by Daniels, Plaintiff's claim against Stuteville necessarily fails unless the facts relate to that punishment. To the extent the due process claim against Stuteville does not relate to that imposed punishment, the Court should find no plausible due process violation. But liberally construing the factual allegations as leading to the punishment by Daniels, the Court should find that Plaintiff might have a plausible due process violation against Stuteville.

Plaintiff also states that Stuteville removed him from his job and placed him into VT plumbing. Am. Compl. at 4. To the extent Plaintiff intends to pursue this as a separate claim, it fails to state a due process violation. Prisoners have "no constitutional right to a specific work assignment." *Jackson v. Cain*, 864 F.2d 1235, 1247 (5th Cir. 1989). Nor do they have any "protected liberty or

25

property interest *per se* in avoiding transfer from a desirable to an onerous job in the prison system."
*Id.* at 1250. In general, prison officials may transfer prisoners "to any job for almost any or no reason
at all." *Id.* at 1248 n.3. Because Plaintiff alleges no facts that removes this claim from the general
rule, this claim fails to state a claim upon which relief can be granted.

### 4. Claims against Psychologist Alsobrooks

Plaintiff's claim against prison Psychologist Alsobrooks arises from Stuteville telling her to
write Plaintiff up for being five minutes late to her drug class in December 2016. *See* Am. Compl.
at 3; Answer 7(a). Plaintiff alleges that this incident report merely sped up the process for him to
have a more serious incident report because it takes three low level incident reports to be taken
before a DHO. *See* Answer 7(b). He also alleges that drug classes are mandatory in federal prison
unless you want to earn less money at prison jobs and have a more limited commissary account. *See*
Answer 7(c). He alleges that he took the drug "class to get out of going to VT Plumbing" and
Alsobrooks wrote him up for being five minutes late when other staff had not called "the 'move
time' correctly." *See id.* He states that "she needs to be in [his] lawsuit" so perhaps "next time she
won't be tricked into helping another staff in a completely different department." *See id.*

While the extent that these factual allegations relate to the punishment by Daniels is likewise
not clear, the Court should find no plausible due process violation against Alsobrooks. Plaintiff
merely sues her because she wrote him up for being late to class. He does not contest the validity
of the charge. He simply has an explanation for being late and disapproves of Stuteville's influence
on her decision to write him up for the incident. Under the alleged facts, the Court should find no
plausible due process violation against the psychologist.

### 5. Claims against VT Plumbing Teacher

Plaintiff's allegations against his VT Plumbing Teacher are extremely sparse. In his amended complaint Plaintiff does not name Hyatt as a defendant, but he does indicate that Hyatt wrote him up for rules violations. Am. Compl. at 4. While Plaintiff specifically states that Hyatt has violated his rights under the Fifth Amendment, he provides no additional facts with respect to this defendant. *See* Answer 1. As already addressed, a mere label is insufficient to state a plausible due process claim. The Court should thus dismiss any due process claim against Hyatt for failure to state a plausible claim upon which relief can be granted. In an abundance of caution, the Court should take judicial notice that Plaintiff does not allege any additional facts concerning Hyatt in his original complaint. The lack of additional facts in the original pleading highlights his inability to assert a viable due process claim against Hyatt.

### 6. *Heck* Bar

Based on the foregoing recommendations, the Court should find that Plaintiff might have a plausible due process violation against Defendants Daniels, Rule, and Stuteville, but should find no plausible due process violation against Hyatt or Alsobrooks. The facts against these latter defendants are simply too sparse or attenuated to find a plausible due process violation. But even for the due process claims against Defendants Daniels, Rule, and Stuteville, the Court cannot find that the claims survive preliminary screening without considering whether *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny bar them. In *Heck*, the Supreme Court ruled that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.
A claim for damages bearing that relationship to a conviction or sentence that has not
been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).

"Although *Heck* involved a § 1983 action by a state prisoner, the reasoning in *Heck* has been applied to bar *Bivens* claims." *Lora-Pena v. FBI*, 529 F.3d 503, 505 n.2 (3d Cir. 2008) (citing *Williams v. Hill*, 74 F.3d 1339, 1341 (D.C. Cir. 1996) (per curiam)); *accord Stephenson v. Reno*, 28 F.3d 26, 28 (5th Cir. 1994) (per curiam) (applying *Heck* in *Bivens* context). Courts have extended the principles in *Heck* to claims seeking declaratory or injunctive relief. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190-91 (5th Cir. 1998) (en banc). In *Edwards*, the Supreme Court also recognized that *Heck* applies to claims involving time-credit issues that affect the duration of a sentence of incarceration. *See* 520 U.S. at 643.

Although Plaintiff has pursued claims related to his disciplinary hearing, his disciplinary conviction has not been reversed on direct appeal, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus. *See* Answer 11. Therefore, if a judgment in his favor on his claims "would necessarily imply the invalidity" of his disciplinary conviction, such claims must be dismissed. *Heck*, 512 U.S. at 487. When success on a civil "damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004).

In this case, Plaintiff alleges due process claims against Defendants Daniels, Rule, and Stuteville that would necessarily imply the invalidity of his disciplinary conviction and accompanying loss of good time credits if the Court were to render a judgment in his favor. Consequently,

28

even though Plaintiff might have plausible due process claims for monetary relief against Defendants Daniels, Rule, and Stuteville, his due process claims are barred by *Heck* currently and "legally frivolous" within the meaning of 28 U.S.C. § 1915. *See Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996) ("A § 1983 claim which falls under the rule of *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated or otherwise called into question."). Accordingly, the Court should dismiss them "with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996); *accord Boyd v. Biggers*, 31 F.3d 279, 283-84 (5th Cir. 1994) (upholding dismissal with prejudice); *Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994) (same in *Bivens* context). When a claim is not cognizable because of the rule espoused in *Heck*, the claim "should be dismissed." *Edwards*, 520 U.S. at 649.

## I. Eighth Amendment

Plaintiff specifically alleges that six defendants have violated his rights under the Eighth Amendment. *See* Answer 1. The Eighth Amendment prohibits the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. This Amendment "prohibits punishments which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, while "the Constitution does not mandate comfortable prisons," *Rhodes*, 452 U.S. at 349, "neither does it permit inhumane conditions," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment mandates that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Id.* (quoting *Hudson v.*

29

*Palmer*, 468 U.S. 517, 526-27 (1984)).

A "prison official violates the Eighth Amendment only when" subjective and objective elements are met. *Id.* at 834. "First, the deprivation alleged must be, objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (citations and internal quotation marks omitted). Second, "a prison official must have sufficiently culpable state of mind" and in a prison-condition case, "that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (citations and internal quotation marks omitted). In other words,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

Plaintiff's reference to the Eighth Amendment arises in his challenge to his disciplinary placement in segregation where he was (1) subjected to continual lighting; (2) denied recreation "yard time," access to law library, radio, and reading materials; and (3) had limited access to showers. *See* Answer 3(c). He claims he was "tortured" for six months while in the SHU, Answer 8(c), and characterizes the six months there as "cruel and unusual punishment," Answer 8(d). He also characterizes his black boxing as "an extra form of cruel and unusual punishment." Answer 3(b).

The alleged denials listed in Category 2 do not rise to the level of cruel and unusual punishment. *See Martin v. Scott*, 156 F.3d 578, 579-80 & n.1 (5th Cir. 1998) (per curiam) (limited recreation time and denials of commissary privileges); *Griffin v. Vaughn*, 112 F.3d 703, 706-09 (3d

Cir. 1997) (finding that prohibiting radios and limiting exercise and showers among other things do not rise to an Eighth Amendment violation); *Williams v. Lehigh Dep't of Corr.*, 79 F. Supp. 2d 514, 518 (E.D. Pa. 1999) (finding "no violation of the Eighth Amendment in the temporary restrictions placed on inmate's reading material and access to the law library"). The alleged restricted showering also fails to state an Eighth Amendment violation. *See Williams*, 79 F. Supp. 2d at 518. Like the plaintiff in *Williams*, Plaintiff has provided no basis to find that his "health or hygiene suffered from the limited showers." *Id.* Similarly, that Plaintiff was allegedly subjected to continual lighting during his time in the SHU does not state an Eighth Amendment claim upon which relief can be granted. *See Chavarria v. Stacks*, 102 F. App'x 433, 436-37 (5th Cir. 2004). Considering the combined effect of all of the alleged deprivations resulting from the disciplinary placement in the SHU, the Court should not find an Eighth Amendment violation under the facts alleged by Plaintiff.

Not only do the alleged deprivations collectively fail to reach the level of an objectively, sufficiently serious deprivation that denies Plaintiff of the minimal civilized measure of life's necessities, but Plaintiff makes no allegation to support any finding that any defendant's mental state rose to the level of deliberate indifference. Plaintiff makes no allegation that any official knew of and disregarded an excessive risk to Plaintiff's health or safety. He makes no allegation that any official was both aware of facts to infer that a substantial risk of serious harm exists or that any official drew such an inference.

With respect to the alleged black boxing of Plaintiff, it is clear that no defendant was personally involved in such conduct. *See* Answer 3(b). While Plaintiff speculates that Captain Rule or the Warden could have been involved, *see id.*, speculation is insufficient to bring an Eighth Amendment claim.

31

The Eighth Amendment concerns cruel and unusual punishment, which is simply not impli-cated by the factual allegations in this case. The factual allegations against the Warden, Stuteville, Hyatt, and Alsobrooks do not even remotely allege any personal involvement in any alleged Eighth Amendment violation. Although the factual allegations against Captain Rule and DHO Daniels are more extensive, any personal involvement regarding confinement in the SHU appears limited to the disciplinary hearing that placed Plaintiff there. And, while Plaintiff specifically alleges that his placement in the SHU by DHO Daniels resulted in torture for six months, he provides no factual allegations to support a finding that any defendant tortured him or otherwise inflicted cruel and unusual punishment upon him. The use of the term "torture" is conclusory and not based upon sufficient factual allegations. Similarly, Plaintiff provides insufficient factual allegations regarding his alleged black boxing to state an Eighth Amendment claim.

For all of these reasons, the Court should find that Plaintiff has failed to state an Eighth Amendment claim upon which relief can be granted.

## VI. CONCLUSION

For the foregoing reasons, the undersigned makes the following **RECOMMENDATIONS** for this case:

1. The Court should treat this case as a non-habeas civil action and assume without deciding that there is an implied cause of action under *Bivens* based on the claims asserted on the alleged facts of this case. The Court should not construe any part of this action as arising under 28 U.S.C. § 2241.

2. Regarding Plaintiff's specifically request relief, the Court should find that the request for (a) an investigation is frivolous; (b) prospective injunctive relief for Plaintiff is moot and for other inmates it fails to state a claim upon which relief can be granted; and (c) early release and/or return

32

of good time credits is not available under *Bivens*. Consequently, the Court should find that the only potentially viable claim for relief is for monetary compensation, which is dependent on the viability of his asserted claims against the various defendants.

3. To the extent Plaintiff asserts any official capacity claims, the Court should find them and all claims against the Department of Justice and the Regional Director legally frivolous.

4. The Court should find all claims asserted against Warden Castaneda to be legally frivolous or fail to state a claim upon which relief can be granted on the facts alleged in this case.

5. The Court should find that any asserted claim based on the alleged threats by Captain Rule fails to state a claim upon which relief can be granted under *Bivens*.

6. The Court should find that, to the extent Plaintiff intends to pursue a conspiracy claim, he fails to state a claim upon which relief can be granted.

7. The Court should find any claim based on the Fourth Amendment legally frivolous or implausible on the facts alleged.

8. With respect to Plaintiff's claims under the Eighth Amendment, the Court should find that Plaintiff has failed to state a claim upon which relief can be granted.

9. The Court should find Plaintiff's reliance on the Fourteenth Amendment to be legally frivolous under the facts of this case or construe such reliance as invoking due process protections that are governed by the Fifth Amendment. It should find no plausible due process claim against Defendants Hyatt or Alsobrooks and dismiss such claims with prejudice. Similarly, the Court should find that any due process claim based on a transfer to FCI Beaumont fails to state a claim upon which relief can be granted. Additionally, it should find no plausible due process claim against Defendant Stuteville to the extent the claim does not relate to the punishment imposed by DHO Daniels. And

although Plaintiff might have plausible due process claims against Defendants Daniels, Rule, and Stuteville based upon the revocation of good conduct time and SHU placement resulting from a disciplinary hearing, any such claims would necessarily imply the invalidity of Plaintiff's disciplinary conviction and accompanying loss of good time credits if the Court were to render a judgment in his favor. Therefore, the Court should find such due process claims are barred by *Heck* currently and are legally frivolous.

10. Because Plaintiff has stated no claim that survives summary dismissal, the Court should **DISMISS** this action with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b) and 1915A, except that it should dismiss the *Heck*-barred due process claims against Daniels, Rule, and Stuteville with prejudice to their being asserted again until the *Heck* conditions are met. The dismissal of this action will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[12] In light of the recommended dismissal, the undersigned directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place

---

[12]Section 1915(g), commonly known as the "three-strikes" provision, provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

in the magistrate judge's report and recommendation where the disputed determination is found.  An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge

is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing

the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the

District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1417 (5th Cir. 1996).

      **SO ORDERED this** _14th_ **day of January, 2019.**

 

 

 

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**